## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

GLEN WILSON,

      Plaintiff,

v.                                                             Case No: 5:16-cv-48-Oc-30PRL

CITY OF GROVELAND, FLORIDA,
and REDMOND JONES, II,

      Defendants.

_____

## ORDER

In 2015, Glen Wilson voiced opposition to a proposal by City Manager Redmond Jones II at a Groveland City Council meeting. Jones allegedly retaliated. Wilson sued Jones and the City for First Amendment retaliation, and the City moved to dismiss. Because Wilson pleaded a plausible basis for municipal liability as to some of the alleged retaliatory acts—but not all—the City's motion should be granted in part, and denied in part.

## FACTUAL BACKGROUND

At a 2015 City Council meeting, Wilson opposed Jones's plan to give an economic incentive package to a business planning to build a facility in the City, and Jones allegedly retaliated. Specifically, Wilson alleges Jones retaliated by doing all of the following:

1) Procuring residents to file false criminal complaints against Wilson;

2) Sending a letter on City letterhead to the developer of Wilson's community, accusing Wilson of "being the aggressor in altercations involving threats";

3) Instructing police department personnel to monitor Wilson and his wife, a then-City Council member;

4) Recommending Wilson's removal from the City's Recreation Advisory Committee ("RAC");

5) Publishing false statements about Wilson being violent at City meetings on the City's website; and

6) Saying during a City meeting that Wilson was violent and had to be subdued by law enforcement.

While Wilson admits Jones is responsible for these acts, he alleges the City is also liable. Wilson argues that Jones committed each of the acts while exercising final decision-making authority delegated to him by the City, which the City disputes.

## PROCEDURAL BACKGROUND

On January 28, 2016, Wilson filed his complaint (Doc. 1) against the City and Jones in his official and individual capacities. This Court dismissed the complaint (Doc. 28) as a shotgun pleading because the claims were not separated as to the defendants or by Wilson's various claims. The Court also dismissed with prejudice the claims against Jones in his official capacity, which were redundant of the claims against the City.

Wilson then filed his amended complaint (Doc. 29), which both Jones and the City moved to dismiss (Docs. 31 and 32). The Court denied Jones's motion and granted the City's (Doc. 39). Notably, the amended complaint contained a second count against the City alleging it retaliated against Wilson by removing him from the RAC after he sent an e-mail to the City's mayor. That claim was dismissed with prejudice. Wilson filed a second amended complaint (Doc. 49), which Jones answered (Doc. 50), and to which the City filed this motion to dismiss (Doc. 51).

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Furthermore, they must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson*, 551 U.S. at 93–94.

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

## DISCUSSION

The sole issue before this Court is whether Wilson pled a plausible basis for municipal liability, which would allow the City to be held liable for Jones's retaliatory acts

alleged in the second amended complaint.[1] To further simplify the issue, Wilson's only argument in favor of municipal liability is that the City delegated final decision-making authority to Jones, which Jones exercised when he committed each of the acts (with one exception related to Jones's recommendation to remove Wilson from the RAC).

A municipality, like the City, can be held liable for the "act or decision of a municipal officer with final policy-making authority." *Carter v. DeKalb Cty., Ga.*, 521 F. App'x 725, 729 (11th Cir. 2013) (citing *Cuesta v. School Bd. of Miami–Dade Cty.*, 285 F.3d 962, 966–68 (11th Cir. 2002)); *see also Quinn v. Monroe Cty.*, 330 F.3d 1320, 1325 (11th Cir. 2003). But a municipality cannot be held liable for the constitutional violations of its officers based on vicarious liability or *respondeat superior*. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978)). In other words, acts of an officer—even one with final policymaking authority—will not be imputed to a municipality unless the acts were within the scope of the officer's final policymaking authority. So "[a] threshold question, therefore, is whether the official is going about the local government's business. If the official's actions do not fall within an area of the local government's business, then the official's actions are not acts of the local government." *McMillian v. Johnson*, 88 F.3d

---

[1] The Court previously ruled, "Taken as a whole, Jones's alleged acts would be sufficient to deter someone of ordinary firmness from exercising their First Amendment rights (even if a single act on its own would not have done so)." (Doc. 39, p. 5). For those same reasons, the Court again rejects the City's argument that Wilson failed to plead an adverse effect on his speech.

1573, 1578 (11th Cir. 1996), *aff'd sub nom. McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 117 S. Ct. 1734, 138 L. Ed. 2d 1 (1997).

Because this threshold question must be addressed for each retaliatory act, the Court will discuss each act separately. If the threshold inquiry is satisfied, the Court will then consider whether Jones had delegated final policymaking authority in that area.

### A. Procuring criminal complaints from residents

Wilson argues it is the City's business to make sure laws are followed and that crimes are reported. (Doc. 54, p. 5). Wilson also argues that the City Charter delegates to the city manager the authority to ensure all laws are followed.[2] (Doc. 54, p. 4). So, Wilson claims, the City is liable for Jones procuring three residents to file false criminal complaints against Wilson.

Accepting Wilson's premise as to what constitutes City business as true, his conclusion is incorrect. There is no correlation between Jones procuring *false* criminal complaints and the City's business of making sure all laws are followed. And there is no correlation between Jones being given authority to ensure laws are followed and him getting residents to file criminal complaints, false or legitimate. Finally, Wilson's claim that Jones was authorized to ensure all laws are followed is too broad to conclude Jones has final policymaking authority over the specific act of procuring criminal complaints.

---

[2] As the City notes, section 4.04(e) of the City Charter actually requires the city manager to "See that all laws, provisions of this Charter and acts of the council *subject to enforcement by him or by officers subject to his direction and supervision*, are faithfully executed." (emphasis added). Wilson fails to address whether the specific criminal complaints alleged against him were subject to Jones's enforcement or of those whom Jones supervised.

Put plainly, procuring false criminal complaints is not the City's business, and Jones was not vested with final policymaking authority in this area. This claim, therefore, is dismissed because Wilson failed to establish a plausible basis for municipal liability.

### B. Sending letter to Wilson's developer

Wilson argues it is the City's business to address public safety and the avoidance of "tomorrow's tragedies." (Doc. 54, p. 5). Wilson also argues that the City Charter vests the city manager with final authority to administer "all affairs of the City." (Doc. 54, p. 5). So, Wilson claims, the City is liable for Jones's decision to send a letter to his community developer, falsely accusing him of being violent and a threat.

The Court concludes the City cannot be held liable for the letter. Having reviewed the letter, the Court concludes the thrust of it is to address a security concern at City meetings after comments on the community blog led to an argument. Jones asks the developer to investigate and to let the City know if it becomes aware of any perceived threats so security could be increased at City meetings. While this portion of the letter clearly deals with City business, it is not the portion with which Wilson takes offense.

Rather, Wilson is concerned with the portion that falsely accuses Wilson of being involved in altercations and making threats. (Doc. 54, p. 2). It is not clear, though, that the letter actually accuses Wilson of making threats or participating in the *near*-physical altercation. Instead, the letter says Wilson was the aggressor in two verbal altercations that *involved* threats and near-physical altercations. For that reason, the Court is not convinced that Wilson's characterization of those portions of the letter is accurate.

But even if the letter clearly accused Wilson of making threats and causing near-physical altercations, the City would not liable. While it is the City's business to make sure its meetings are secure, the City has no business in making false accusations against its residents. And there is certainly no indication that the City delegated authority to Jones to make false accusations. As such, this claim, too, should be dismissed.

### C.  Order surveillance of Wilson and his wife

Wilson argues the City Charter delegates to the city manager the authority to direct and supervise all City departments and agencies. (Doc. 54, p. 6). So, Wilson argues, the City is liable for Jones ordering the police chief and a detective to surveil Wilson and his wife. Wilson does not address the threshold question of whether that is the City's business, but the Court concludes that police surveillance falls within that broad category.

The Court again concludes that second amended complaint sufficiently alleges municipal liability for the police department putting Wilson and his wife under surveillance. Additional facts may later show that Jones actually lacked final policymaking authority in this area, but that is an issue for summary judgment—not a motion to dismiss.

### D.  Recommending Wilson's removal from RAC

Wilson argues the City Charter vests the city manager with exclusive authority to remove employees and appointed officers. (Doc. 54, p. 6). Therefore, Wilson claims, the City is liable for Jones recommending his removal from the RAC in retaliation for his comments, a recommendation the City later approved. (Doc. 54, pp. 6–7). Alternatively, Wilson argues that if Jones was not the final policymaker regarding removing RAC

members, then the City ratified Jones's recommendation when it removed Wilson from the RAC in violation of his First Amendment rights. (Doc. 54, p. 7).

The Court cannot agree. Although not addressed by Wilson, the Court assumes appointing and removing RAC members is within the City's business. As the City notes, though, Jones is not the final policymaker when it comes to this function: the City Council is vested with sole discretion when it comes to appointing and removing RAC members. *See* Groveland City Code § 2-303.

The Court rejects Wilson's argument that the City Charter controls over the ordinance because the Court finds no direct conflict between the two. The City Charter prohibits the City Council from dictating "the appointment or removal of any city officer or employee *whom the manager or any of his subordinates are empowered to appoint*…." Groveland City Charter, Art. III, § 3.05(a). Neither the city manager nor his subordinates, though, are empowered to appoint and remove RAC members. That authority rests solely with the City Council. Groveland City Code § 2-303 ("members of the [RAC] shall be appointed to and removed from the committee in the manner as deemed appropriate by the city council, in its sole discretion. The members of the committee shall serve at the pleasure of the city council."). So there is no conflict between the ordinance and City Charter.

The Court also rejects Wilson's argument that the City ratified Jones's unconstitutional decision to remove Wilson from the RAC. In previous filings, Wilson alleged and argued he was removed from the RAC in retaliation for an e-mail he sent the mayor nearly 6 months after Jones recommended his removal from the RAC. (Doc. 29, ¶¶ 22–23; Doc. 33, § III). The Court dismissed Wilson's claim against the City with prejudice.

(Doc. 39). Wilson cannot now repackage his dismissed claim to argue that the City Council's decision to remove him had nothing to do with his e-mail. And, even if he could, Wilson has not pleaded that the City's decision to remove him was for the same unconstitutional basis as Jones's recommendation six months prior. This claim, therefore, must be dismissed.

### E.  Publishing false statements about Wilson on the City's website

Wilson argues the City Charter delegates to the city manager the authority to direct and supervise all City departments and agencies. (Doc. 54, p. 8). Therefore, Wilson argues, the City is liable for Jones's decision to have the city clerk publish false statements about him on the City's website. Wilson again fails to address the threshold question of whether that is the City's business, but the Court again concludes that maintaining the City's website is clearly a function of the City.

The Court concludes Wilson has sufficiently pled a basis for municipal liability for this claim. As stated above, additional facts may later show that Jones actually lacked final policymaking authority in this area, but that is an issue for summary judgment—not a motion to dismiss.

### F.  Making false statements about Wilson at City Council meeting

Lastly, Wilson argues the City Charter grants authority to Jones to take part in City Council meetings. (Doc. 54, p. 8). Wilson also argues that Jones was acting as final policymaker pursuant to that authority when he made false statements about Wilson during a City Council meeting. (Doc. 54, pp. 8–9). So, Wilson argues, the City is liable for Jones

making the false statements. Wilson again fails to address whether Jones's statements should be considered the City's business, but the Court will assume it is.

Even so, the Court disagrees that Wilson pled a plausible basis for municipal liability. The fact that the City Charter allows the city manager to speak at City Council meetings is not the same as delegating final policymaking authority to speak for the City at City Council meetings. Without Jones being delegated final policymaking authority, the City cannot be liable for his allegedly false statements. What Wilson seeks to do is hold the City vicariously liable for Jones's actions, which is impermissible. *Hoefling*, 811 F.3d at 1279. Because Wilson has not plead a plausible basis for municipal liability for this claim, it also must be dismissed.

Accordingly, it is ORDERED AND ADJUDGED that:

1.  Defendant City of Groveland's Motion to Dismiss Second Amended Complaint (Doc. 51) is GRANTED in part and DENIED in part.

2.  Plaintiff's claims that Defendant City of Groveland is liable for the following retaliatory acts are DISMISSED with prejudice for the reasons explained above:

    a.  The claim that Defendant Jones directed 3 residents to falsely accuse Plaintiff of violating the law (Doc. 49, ¶ 15(i));

    b.  The claim that Defendant Jones wrote a letter to Plaintiff's community developer falsely accusing him of being an aggressor in altercations involving threats (Doc. 49, ¶ 15(ii));

    c.   The claim that Defendant Jones used his authority to recommend Plaintiff's removal from the RAC (Doc. 49, ¶ 15(iv)); and

    d.   The claim that Defendant Jones falsely stated at a public meeting that Plaintiff was so violent at a public meeting that police had to restrain Plaintiff (Doc. 49, ¶ 15(vi)).

3.     Defendant City of Groveland shall respond to the remaining allegations of the second amended complaint within 14 days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this 19th day of December, 2016.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record